ROBINSON v. CLAGGETT et al., Appellants.

Division One, March 30, 1899.*

1. **Ejectment: WHAT MUST BE SHOWN.** In ejectment, title, and not a mere right to title, must be shown to entitle plaintiff to judgment. If the chain of title at any place between the patent and his deed, breaks in two, he must then show ten years' adverse, actual, open and notorious possession in himself or those under whom he claims.

---

*NOTE.—Decided March 7, 1899. Motion for rehearing filed. Motion overruled March 30, 1899.

2. ———: ———: RIGHT TO DEED. Plaintiff must show a good deed to the land, and not a mere right to a deed. He can not show that one through whom he claimed was the purchaser of the patentee's land at a tax sale, and also show that such purchaser was because of that fact entitled to a deed describing the land, but did not get it.

3. ———: ADVERSE POSSESSION. The fact that one who claimed a tract of land for twenty or thirty years, "sometimes cut the timbers off the land to make boards and troughs," is insufficient to establish adverse possession, especially so when the trees cut in all those years did not exceed five or six.

4. ———: ———: BY WHAT CONSTITUTED? To constitute possession adverse to the record owner, there must be an act or acts, so open, pronounced and conspicuous, that the owner in looking after the land might see some evidence of hostile claim or possession.

*Appeal from Lincoln Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED.

NORTON, AVERY & YOUNG for appellants.

(1) The court erred in permitting the patent from the United States to be introduced, as it in no wise described the land sued for, and all the evidence shows that the legal title to the land in controversy, that is, the twenty-six and one-fourth acres, is in the United States; therefore plaintiff, not having the legal title, can not recover, even on the theory of the statutes of limitation, as the statutes do not run against the government. Gibson v. Choteau, 13 Wall. 92; Smith v. Madison, 67 Mo. 695. (2) The plaintiff, if he recovers at all in an ejectment suit, must recover on the strength of his own title and not on the weakness of the defendants' and must show legal title in himself. The equitable title will not support ejectment. Hunt v. Selleck, 118 Mo. 588; West v. Bretelle, 115 Mo. 653; Wilkerson v. Eilers, 114 Mo. 245; Siemers v. Schrader, 14 Mo. App. 346; Foster v. Denton, 51 Mo. 39; Hunt v. Railroad, 75 Mo. 252; Finley v. Babb, 144 Mo. 403; Clay v. Mayr, 144 Mo. 376. (3) None of the

Robinson v. Claggett.

records offered in evidence and objected to by defendants should have been admitted, as the originals were not accounted for, nor were they shown to be lost or destroyed or not in the possession of the plaintiff, and, therefore, secondary evidence was admitted over the objection of the defendants.   Crispen v. Hannavan, 72 Mo. 548.

JOHN H. MURPHY and ELIJAH ROBINSON for respondent.

(1) The patent from the United States to John Hunter, read in connection with the oral testimony of John W. Hunter, and the entries on the plat book clearly identified the land and that is all the law requires.   Bates v. Bank, 15 Mo. 307; Lisa v. Lindell, 21 Mo. 127; Webster v. Blount, 39 Mo. 500; McPike v. Allman, 53 Mo. 551; Hammond v. Johnson, 93 Mo. 198; Marvin v. Elliott, 99 Mo. 616.   (2) Where a plaintiff and defendant, in an ejectment suit, claim under the same person, from a common source, it is not necessary for plaintiff to trace his title back any further than to such common source.   Butcher v. Rogers, 60 Mo. 138; Grandy v. Casey, 93 Mo. 595; Huff v. Morton, 94 Mo. 405; Holland v. Adair, 55 Mo. 40; Cummings v. Powell, 97 Mo. 524; Smith v. Lindsey, 89 Mo. 76.

ROBINSON, J.—This is an action of ejectment for the possession of twenty-six and one-fourth acres of land located in the northwest quarter of section 18, township 49 of range 1 west, in Lincoln county, in which judgment was rendered for plaintiff in the circuit court, and the case brought to this court on defendants' appeal.

It will be unnecessary to notice the numerous objections that were made by defendants to the deeds offered in evidence by plaintiff, in support of his claim of title, many of which objections, however, were well made, and upon what theory they were overruled we must confess ourselves at a loss to

understand; but as the judgment for plaintiff, upon his own showing, was itself an error, the errors committed along the progress of that showing, are of no concern now.

If it be conceded in the first instance, that the land in suit was covered by a patent issued by the United States Government to one John Hunter in 1824, read in evidence by the plaintiff—a very doubtful proposition—Hunter's title thereto has never reached, through mesne conveyances, Samuel Howell, through whom plaintiff claims title, as disclosed by his reply to the separate answer of defendants Hart and Palmer. In 1824 Hunter conveyed the land in suit by warranty deed to one Zaddock Woods, and there the record title of this land still remains, so far as is disclosed by the record in this case. Plaintiff next read in evidence a deed conveying this land from Francis Parker and wife to Samuel Howell, dated April 24, 1857. Then a deed from George Collins and wife to Parker, conveying same lands and dated April 3, 1851. Then a deed from George Collins to David Baily, conveying same lands, dated May 10, 1837. Then a deed from Nathaniel Simonds and wife and David Baily to George Collins, dated April 4, 1844. Next plaintiff offered a deed from Zaddock Woods by the sheriff of Lincoln county, to George Collins, conveying twenty-six and one-fourth acres of land in the northeast quarter of section 18, township 49, of range 1 west, dated April 6, 1824.

To this deed defendant objected for the reason that it did not describe the land in controversy and formed no link in the chain of plaintiff's title. This objection was by the trial court overruled, and the deed was then read in evidence. Why it was offered in evidence, and why permitted to be read, no explanation is to be found in the record. But in plaintiff's statement of the case, found in his brief filed herein, he says: "The sheriff undertook to convey the land in controversy to the purchaser, one George Collins, by deed dated April 6, 1824, but a mistake was made in the descrip-

tion, so that technically the title of Woods to the land was not transferred to Collins by said deed. However, it seems that the mistake was not then discovered and it was treated as though Collins acquired the title and on April 3, 1851, said Collins conveyed said tract to Francis Parker, and on April 24, 1857, said Parker conveyed same to Samuel Howell," and said Howell for some unexplainable reason is designated by plaintiff throughout his brief filed herein, as the common source of title through whom he and defendants claim the land.

How plaintiff knew that a mistake was made by the sheriff in describing the land sold as the property of Zaddock Woods at which Collins became the purchaser, and that the twenty-six and one-fourth acres in controversy was intended to be sold and conveyed by the sheriff and not the land named in the deed offered in evidence, we have no way of informing ourselves, but must rely for its correctness solely upon what we see stated for the first time by plaintiff's counsel through his briefs filed herein. But suppose a mistake was made, as contended by plaintiff in his briefs, and that we could receive his mere naked statement of the fact, as the proof thereof, how can that be said to operate to the advantage of plaintiff, who in this action must show a legal title to the land from Woods, and not a mere right to a deed growing out of the facts from which the mistake is shown. Title, and not the bare right of title, must be shown to entitle plaintiff to a judgment in this his action of ejectment.

But again, says plaintiff, "if the legal title to this land of record is not in plaintiff, but is still outstanding in Woods, still since Samuel Howell has acquired title to the land by limitation, and independent of the deeds before mentioned, it is not necessary for plaintiff in deducing his title, to go back of said Howell." This position would be true provided the assumption on part of plaintiff was justified that Howell had acquired title to the land in suit by adverse

possession for the limitation period, and provided further that defendant's claim of title was through said Howell, neither of which assumptions, however, are conceded or recognized by defendants, and neither of which are true, so far as the record of this case discloses the facts.

Long after the death of Samuel Howell and long after he had made a deed attempting to convey whatever interest in this land he then had and held, it remained as wild and uninclosed land in the actual use and possession of no one. No inclosure or improvements of any kind had ever been made upon this land until in the year 1882 or 1883, when one Bryant, who held a deed purporting to convey this land to himself from said Howell, moved upon it and inclosed it with a fence.

The evidence in this case shows that Howell was as barren of title to this land by limitation as he was of title by deed. The testimony of James and Logan Howell to the effect that their father Samuel Howell claimed the land for twenty or twenty-five years before he deeded it to Bryant, and that he "sometimes cut timber off of the land to make boards and troughs," is totally inadequate of itself, or when connected with any other facts shown in the case, to establish a title to the land by adverse possession, and particularly so when the possible maximum limit of trees shown to have been cut was not more than five or six during the entire period of twenty or twenty-five years, with the minimum reduced on cross-examination to a bare positive one.

The lands of this State are not held by titles so slender that they will drop from the control of the true record owner, and by construction, fall into the possession of a mere stranger by the occasional act upon his part of cutting and taking a tree therefrom.

No evidence appears in this case to warrant the inference that Samuel Howell for any ten consecutive years was ever in the open, notorious and adverse possession of this

land, or that he ever did those acts upon or about it from which an adverse holding as against the record owner would or could be inferred.

While it is not absolutely necessary that lands be inclosed with a fence to indicate an adverse holding or authority over it hostile to the claim and constructive possession that follows the record owner, still something more is necessary than a mere modest act of cutting one, or five or six trees therefrom during a period of ten consecutive years, coupled with a statement from the party thus entering upon the land and cutting the trees to his sons that he claimed the land as his own and that he paid the taxes upon it. The occupation of the land, the use of its products, the assumption of dominion and authority over it, must be by act or acts so open, pronounced and conspicuous that the landowner in looking after his land might see some evidence of a hostile claim or possession that he might challenge or contest. This certainly could not be said of Howell's acts and declarations concerning the land in suit. As plaintiff has by his own showing disclosed the fact that Howell, through whom he claims title, had neither title to this land by deed or by limitation, this suit must of necessity fail, and a discussion as to the force and effect of the intervening deed between Howell and plaintiff, shown in his chain of title, and of his equities as against the claim of defendants under one of these intervening deeds, would be of no value in determining the proper disposition to be made of this appeal and case, they will be ignored. In actions of ejectment the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of that of defendant's or upon the fact that he has equities superior to those of defendant.

Judgment in this case will be reversed. BRACE, P. J., and VALLIANT, J., concur; MARSHALL, J., absent.